## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Bankruptcy No. 14-11277-JAD |
| TRUSTEES OF CONNEAUT | ) | |
| LAKE PARK, INC., | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | X | |
| | ) | |
| TRUSTEES OF CONNEAUT | ) | Adversary No. 16-01029-JAD |
| LAKE PARK, INC., | ) | |
| | ) | Related To Docs.# 42 and 47 |
| Plaintiff, | ) | |
| | ) | |
| -v- | ) | |
| | ) | |
| PARK RESTORATION, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | X | |

## MEMORANDUM OPINION[1]

The question presented to the Court, in the context of a *Motion for Judgment*

*on the Pleadings* filed by the plaintiff, is whether the language of a contract

renders the defendant liable to the plaintiff for damages to property destroyed by

---

[1]This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. The plaintiff asserts that this Adversary Proceeding is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(O). However, garden variety breach of contract claims are not core proceedings. In re Astro Power Liquidating Trust, 335 B.R. 309, 323 (Bankr. D. Del. 2005). Despite the non-core nature of this proceeding, the parties have consented to this Court's ability to enter final judgment. See *Order of Court Approving Joint Discovery Plan and Statement of Estimated Time of Trial* filed at ECF Doc. #36; see also Wellness Int'l Network, Ltd. v. Shariff, __ U.S. __, 135 S.Ct. 1932 (2015) and In re River Entertainment Co., 467 B.R. 808 (Bankr. W.D. Pa. 2012).

fire.   Because the contract at issue does result in such liability as to the defendant, the Court finds that the plaintiff's *Motion for Judgment on the Pleadings* shall be granted, in part, with respect to the cause of action asserted in Count I of the *Complaint*.   Specifically, judgment on the pleadings shall be entered as to the defendant's liability for breach of contract, and a trial will be scheduled as to the amount of damages to be assessed against the defendant under Count I of the *Complaint*.

Given this disposition, and given the nature of notice pleading under the Federal Rules, it is also appropriate for the Court to enter an order which denies a dueling *Motion for Judgment on the Pleadings* filed by the defendant.   It is also appropriate for the Court to stay the prosecution of the remaining counts of the plaintiff's *Complaint* because the plaintiff is entitled to only one recovery against the defendant.

## I.
## Summary of the Lawsuit as Framed by Both
## the Pleadings on File and the Record Made Before This Court

While this case is quite contested, the facts (as admitted in the pleadings and as contained in the undisputed record) are not complicated.

The plaintiff is the Trustees of Conneaut Lake Park, Inc. (referred interchangeably herein as the "plaintiff" or "TCLP"). See *Complaint* (filed at ECF Doc. #1) at ¶6.  TCLP owns real estate located in Crawford County, Pennsylvania. On this real estate sat a building known as the "Beach Club." See *Complaint* at ¶7;

<u>See</u> *Park Restoration, LLC Amended Answer to Complaint and Counterclaim* (hereinafter referred to as the "*Answer*")(filed at ECF Doc. #12) at ¶7[2]

The defendant is an entity known as Park Restoration, LLC (referred interchangeably herein as the "defendant" of "Park Restoration"). On or about November 24, 2008, TCLP and Park Restoration entered into a *Beach Club Management Agreement*, pursuant to which the defendant agreed to provide operational and management services with respect to the Beach Club. <u>See</u> *Complaint* at ¶8; *Answer* at ¶8.

The *Beach Club Management Agreement* contained various terms and conditions, including provisions whereby for a term of twenty years the defendant agreed to undertake "physical control and security, all maintenance at the facility, ... insuring that the property is fully secured and maintained in a commercially reasonable manner ..." <u>See</u> *Complaint* at ¶ 9(b)(quoting the *Beach Club Management Agreement* at §1); *Answer* at ¶9.

The *Beach Club Management Agreement* also provided that the defendant agreed to hold the plaintiff "harmless and fully indemnify the [plaintiff] from any loss, cost or damage with respect to any ... damage claimed to ... property ... as

---

[2] In this litigation, Park Restoration asserted a counterclaim against TCLP as a result of the plaintiff's failure to have fire insurance. After filing the *Answer*, Park Restoration withdrew its counterclaim. <u>See</u> *Brief in Support of Defendant's Cross Motion for Judgment on the Pleadings and in Opposition to Trustee's Motion for Judgment on the Pleadings* (ECF Doc. #46) at p. 4. Given the withdrawal, an order dismissing the counterclaim shall be entered by the Court.

a result of [defendant's] use, misuse, occupancy, procession [sic], or abandonment of the Beach Club." <u>See</u> *Complaint* at ¶15 (quoting §7 of the *Beach Club Management Agreement*); *Answer* at ¶15.

The *Beach Club Management Agreement* contained additional terms and conditions which imposed certain duties upon the defendant in the event of termination of the agreement. Specifically, the agreement provided that "In the Event of termination for any reason, Park Restoration warrants and represents that it will vacate the premises ensuring that it is in broom clean condition without any damage to any equipment or property." <u>See</u> *Complaint* at ¶11 (quoting § 6(c) of the *Beach Club Management Agreement*); *Answer* at ¶11.

From the inception of the *Beach Club Management Agreement* through August 1, 2013, the defendant occupied, used and possessed the Beach Club. <u>See</u> *Complaint* at ¶16; *Answer* at ¶16. On August 1, 2013, the Beach Club was destroyed by fire. <u>See</u> *Complaint* at ¶¶17 and 18; *Answer* at ¶¶17 and 18. The Beach Club building was never rebuilt and by letter dated March 20, 2015, TCLP advised Park Restoration that the *Beach Club Management Agreement* has been terminated. <u>See</u> *Complaint* at <u>Exhibit B</u>; *Answer* at ¶19.

After the Beach Club was destroyed by the fire, a dispute arose with respect to the right to insurance proceeds payable by Erie Insurance on account of the calamity. By way of background, TCLP did not insure the Beach Club. Rather,

00020397

-4-

Park Restoration insured the Beach Club building for $611,000.[3]   After the fire,

Park Restoration and TCLP made competing claims to the insurance proceeds.

To further complicate the matter, various tax creditors of TCLP also claimed a

right to be paid from the insurance proceeds.

Ultimately, after the insurance proceeds were deposited into the Court's

registry, this Court determined that the defendant had an insurable interest in the

Beach Club and that, but for the claims of the tax creditors, all of the insurance

proceeds would be payable to the defendant.  The Court also determined that the

plaintiff was neither an insured nor loss payee under the policy and that the

plaintiff was entitled to none of the proceeds. See *Memorandum Opinion dated*

*12/22/2015* (Adversary Proceeding 15-01010-JAD at ECF Doc. #82) and

*Memorandum Opinion Signed on 4/12/2016* (Adversary Proceeding No. 15-01010-

JAD at ECF Doc. #145).

An appeal was taken by Park Restoration and this Court's determination

that the tax creditors were entitled to some of the insurance proceeds was

reversed by the District Court.  Thus, all of the insurance proceeds are payable to

Park Restoration on account of the fire at the Beach Club.  A further appeal was

taken by the tax creditors to the Third Circuit Court of Appeals, which remains

pending.

---

[3] Business personal property and personal property of others at the Beach Club were also
insured up to the amount of $100,000.

In any event, this Court determined that TCLP  had no direct claim to any of the insurance proceeds payable to Park Restoration on account of the building destroyed by fire.  Undaunted by this result, TCLP filed this adversary proceeding on June 13, 2016.

On June 20, 2016 the plaintiff also sought in this adversary proceeding a preliminary injunction enjoining the payment of any insurance proceeds to Park Restoration. In essence, TCLP sought a prejudgment attachment of all insurance proceeds payable to Park Restoration.

Finding that the prejudgment injunction (or attachment) sought by TCLP exceeded this Court's jurisdiction, this Court denied the plaintiff's request for injunctive relief pursuant to the United States Supreme Court's holding in Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc., 527 U.S. 308 (1999). See *Memorandum Opinion Regarding Plaintiff's Motion For Preliminary Injunction Signed on 8/1/2016* (filed at ECF Doc. #25); *Order Signed on 8/1/2016 Denying Plaintiff's Motion For Preliminary Injunction* (filed at ECF Doc. #26).

The current status of the proceeds of insurance is that $132,948.17 has been released to Park Restoration and the remaining balance remains on hand with the Clerk pending the outcome of the appeal lodged by the tax creditors. See *11/10/2016 Letter from Clerk's Office to Attorney John F. Mizner Regarding Payment of Registry Funds* (Adversary Proceeding No. 15-01010-JAD at ECF Doc. #178).

As to the instant adversary proceeding, the *Complaint* alleges, among other things, that the *Beach Club Management Agreement* was terminated as a result of the cessation of operations occasioned by the fire (for after all the Beach Club ceased to exist). See *Complaint* at ¶18.

Indeed, under the *Beach Club Management Agreement*, Park Restoration was to insure "that the Beach Club is a fully operational and full service club;" but, again, after August 1, 2013 the Beach Club was not operational. See *Beach Club Management Agreement* at §1.

By letter dated March 15, 2015, TCLP advised Park Restoration of the termination of the underlying agreement, and advised Park Restoration that TCLP reserved all rights and remedies that TCLP may have against Park Restoration. See *Complaint* at Exhibit B.[4]

The *Complaint* also alleges that upon the termination of the agreement, the defendant failed to "ensure" that the Beach Club was left in "broom clean condition without any damage to any equipment or property." See *Complaint* at ¶21. As a result, the plaintiff alleges two causes of action sounding in breach of contract and one cause of action sounding in contractual indemnity. See *Complaint* at ¶¶23-44.

Within each cause of action, TCLP contends that it has been harmed as a

---

[4] Park Restoration has offered no defense to the termination of the *Beach Club Management Agreement*. In addition, the parties have acknowledge that the termination of the agreement does not operate as a waiver or estoppel as to TCLP's rights and/or remedies.

result of the destruction of the Beach Club (which the plaintiff alleges is valued of "no less than $611,000"). See *Complaint* at ¶¶21 and 22.  The defendant disputes these allegations and denies any liability whatsoever with respect to the causes of action asserted in the *Complaint*.

## II.
## The Dueling Motions for Judgment on the Pleadings

After the pleadings closed, TCLP moved for judgment on the pleadings as to Count I of its *Complaint*.

Count I of the *Complaint* is a cause of action for breach of contract.  In its *Motion for Judgment on the Pleadings*, the plaintiff contends that the admissions contained in the pleadings establish that, upon termination of the *Beach Club Management Agreement*,  Park Restoration had a duty to vacate the Breach Club and return it to the plaintiff in a "broom clean" condition "without damage" for any reason.

The *Motion for Judgment on the Pleadings* further avers that, due to the fire, the defendant failed to return the property in a "broom clean" condition "without any damage" and is liable for the damages sustained by TCLP as a result of the same.

The plaintiff further contends that Park Restoration admitted in the insurance litigation that the value of the Beach Club building is at least $611,000. Given this value, the plaintiff contends that $611,000 is the amount of damages it has suffered as a result of Park Restoration's failure to return the Beach Club

to TCLP "without any damage."

Park Restoration opposes TCLP's *Motion for Judgment on the Pleadings* by asserting two primary defenses to the plaintiff's claims.

One, Park Restoration contended at oral argument that termination of the agreement effectively terminated any executory obligation the defendant had to return the premises to the plaintiff in a "broom clean" condition that is "without any damage."

Two, even if Park Restoration's obligation to return the premises in a "broom clean" condition "without any damage" survived the termination of the *Beach Club Management Agreement*, Park Restoration contends that its obligation to perform should be excused under the doctrine of impossibility. In this regard, the defendant contends that the existence of the Beach Club's premises was necessary to the defendant carrying out the purpose of the *Beach Club Management Agreement*. According to Park Restoration, once the Beach Club was destroyed by fire, it was simply impossible for Park Restoration to return the building "broom clean" and "without damage to any equipment or property."

In light of these defenses, Park Restoration also filed its own *Motion for Judgment on the Pleadings* seeking to have Count I of the plaintiff's *Complaint* dismissed.

Park Restoration's *Motion for Judgment on the Pleadings* also asserted additional defenses and sought dismissal of Counts II and III of the *Complaint*.

As to Count II of the *Complaint*, it is a cause of action for breach of contract and seeks damages as a result of Park Restoration's alleged failure to secure the Beach Club in a "commercially reasonable manner."  In its *Motion for Judgment on the Pleadings*, Park Restoration contends that Count II should be dismissed because the *Complaint* is devoid of any facts supporting a claim that Park Restoration did not operate the Beach Club in a commercially reasonable manner.

Count III of the *Complaint* is a cause of action sounding in indemnity.  The defendant's *Motion for Judgment on the Pleadings* argues that this count should be dismissed because the *Beach Club Management Agreement*'s terms do not "clearly" and "expressly" provide that Park Restoration should bear the entire loss of the Beach Club in the event of the building's destruction.  Moreover, even if the contract provided as much, Park Restoration contends that any indemnification obligation it had under the contract is void by operation of the doctrine of impossibility.

Suffice it to say, TCLP disputes the contentions of Park Restoration's *Motion for Judgment on the Pleadings*.  After having afforded the parties the opportunity to file briefs and supplemental briefs in support of their respective positions, this matter is now ripe for determination.

### III.
### Legal Standard

Fed.R.Civ.P.12(c), as incorporated by reference in Fed.R.Bankr.P. 7012, permits a party to move for judgment on the pleadings.  When a party moves for

judgment on the pleadings, the Court is to ascertain whether the pleadings raise any material factual disputes; and if there are none, the Court is to determine whether the moving party is entitled to judgment as a matter of law. See Inst. for Scientific Info., Inc. v. Gordon and Breach, Sci. Publishers, Inc., 931 F.2d 1002, 1005 (3d Cir. 1991). As to the latter component, the motion for judgment on the pleadings is akin to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). See Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).

Fed.R.Civ.P. 12(b)(6) provides that complaints may be dismissed for "failure to state a claim on which relief can be granted."

In deciding such a motion, the Court "may consider material which is properly submitted as part of the complaint . . . without converting the motion to dismiss into a motion for summary judgment." Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001).

The Court may also consider: documents the complaint incorporates by reference or are otherwise integral to the claim (see Rosenfield v. HSBC Bank, USA, 681 F.3d 1172, 1178 (10th Cir. 2012), Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012), Building Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 187 (2d Cir. 2012)), information subject to judicial notice (see Schatz v. Republication State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012), Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1016 n. 9 (9th Cir. 2012), Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010)),

and matters of public record such as orders and other materials in the record of the case (see Miller v. Redwood Toxicology Lab, Inc., 688 F.3d 928, 931 n. 3 (8th Cir. 2012)).

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556).

Determining whether a claim for relief is plausible is a "context-specific task" requiring the court to "draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. at 679 (citing Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation to the elements of a cause of action will not do.'" Id. at 678.

Additionally, the court need not accept as true bald assertions (or bald conclusions or inferences), legal conclusions couched or masquerading as facts, or conclusions contradicted by the complaint's own exhibits or other documents of which the court may take proper notice. See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008); Bishop v. Lucent Tech., Inc., 520 F.3d 516, 519 (6th Cir. 2008); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)(the court is not

obligated to "swallow the plaintiff's invective hook, line, and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited").

## IV.
## <u>Discussion</u>

In examining the dueling *Motions for Judgment on the Pleadings*, it appears that the parties do not contest the fact that the parties entered into the *Beach Club Management Agreement*; nor do they contest other facts such as: the fact that the Beach Club was destroyed by fire, the fact that since the fire the Beach Club ceased operations, the fact that the agreement has been terminated, and the fact that Park Restoration did not return the Beach Club to TCLP in a condition that was "without any damage."

Given these admissions in the pleadings, the ultimate question before the Court is whether a judgment as a matter of law should be entered in favor of TCLP and against Park Restoration or *vice versa*?  The answer to this question rests upon the resolution of the following four legal issues: One, does the *Beach Club Management Agreement* impose liability upon the defendant for failure to return the Beach Club to TCLP without damage?  Two, if the contract imposes such liability upon the defendant, does the termination of the agreement vitiate the duty of the defendant to compensate the plaintiff for damages to the premises? Three, if the duty owed by the defendant survived termination of the contract, is the duty to perform excused by the doctrine of impossibility of performance? Four,

do all or some of the causes of action asserted by the plaintiff fail due to the fact that TCLP has not alleged enough facts to support a claim based on an any alleged failure of Park Restoration to maintain the Beach Club in a commercially reasonable manner?

### Claims Based on Failure to Return
### the Premises Without Any Damage

Count I of the plaintiff's *Complaint* is a breach of contract action based upon Park Restoration's alleged failure to honor Section 6(c) of the *Beach Club Management Agreement*, which states: "In the Event of termination for any reason, Park Restoration warrants and represents that it will vacate the premises ensuring that it is in broom clean condition without any damage to any equipment or property."

Park Restoration suggests that the plaintiff's complaint does not state a claim for relief and should be dismissed. Conversely, TCLP suggests that it has stated a claim and that Park Restoration offers no viable defense to it.

As to whether Count I of the *Complaint* states a claim, the law of Pennsylvania provides that a plaintiff asserting a cause of action for breach of contract must demonstrate three elements to prove its case. These elements are: (1) that there was a contract upon which the defendant owed to duty to the plaintiff; (2) that the defendant breached its contractual duty; and (3) that the plaintiff suffered damages from the breach. See McShea v. City of Philadelphia, 995 A.2d 334, 340 (Pa. 2010).

In the instant case before the Court, the admissions contained in the pleadings reflect that, absent one of the defenses analyzed below, TCLP has established a *prima facie* case for breach of contract against Park Restoration.

In the *Complaint* and *Answer* at paragraph 7 the parties admit that the plaintiff owned the Beach Club.   At paragraph 8 of both the *Complaint* and *Answer*, the parties acknowledge entering into the *Beach Club Management Agreement*.   At paragraphs 18 and 19 of the *Complaint* and *Answer* the parties acknowledge that the *Beach Club Management Agreement* was terminated. And, the parties do not dispute the fact that the agreement expressly provides that upon termination of the agreement Park Restoration was duty bound to "vacate the premises ensuring that it is in broom clean condition without any damage to any equipment or property."   Further, the parties admit in paragraph 17 of both the *Complaint* and *Answer* that the Beach Club was destroyed by fire and that it was not returned to the plaintiff in "broom clean" condition "without any damage to any equipment or property."

Given this state of the record, the  admissions identified above warrant judgment on the pleadings in favor of TCLP and against Park Restoration as to liability for the breach of contract claim set forth in Count I of the *Complaint*. However, before the Court may enter such judgment it analyzes below the various defenses asserted by Park Restoration.

**Impact of Termination of the Agreement
Upon Park Restoration's Duty to Return the Premises
"Without Any Damage to Any Equipment or Property"**

Park Restoration argues that since it is conceded by the parties that the *Beach Club* has been terminated, Park Restoration had no executory duty to return the premises to TCLP in a condition that is "broom clean without any damage to any equipment or property."

Absent the applicability of the defense of impossibility of performance, which is discussed more fully below, it appears that Park Restoration's argument is without merit. The Court reaches this conclusion because Park Restoration's argument is contrary to the provisions explicitly contained in the *Beach Club Management Agreement*.

The fundamental rule in contract interpretation is for the Court to "ascertain the intent of the contracting parties." Mason v. Range Resources Appalachia, LLC, 120 F.Supp. 3d 425, 439 (W.D. Pa. 2015)(citing Lesko v. Frankford Hosp. Bucks Cty., 15 A.3d 337, 342 (Pa. 2011)(quoting Adjustment Bureau, Inc. v. Allstate Inso. Co., 905 A.2d 462, 468 (Pa. 2006). When a written contract "is clear and unequivocal, its meaning must be determined by its contents alone." Id. (citing Lesko, supra. (quoting Steuart v. McChesney, 444 A.2d 659, 661 (1982)).

*Sub judice*, the contractual provision at issue is remarkably simple. Section 6(c) of the *Beach Club Management Agreement* states that "[i]n the Event of

termination for any reason, Park Restoration warrants and represents that it will vacate the premises ensuring that it is in broom clean condition without any damage to any equipment or property."

The operative phrase in this section of the agreement is "in the Event of termination."[5]  Park Restoration seems to contend that this phrase really means that Park Restoration owes its duties to TCLP "prior to an Event of termination." However, this is not what the agreement states.

In fact, Park Restoration's construction is demonstrably at odds with the plain language of the contract which, in no uncertain terms, triggers Park Restoration's duty to "vacate the premises ensuring that it is in broom clean condition without any damage" upon the occurrence of an "Event of termination." Clearly, the obligations imposed upon Park Restoration in this section of the contract survives termination.

This Court's conclusion is consistent with case law in the landlord-tenant context which construes a tenant's obligation to restore premises "at the end of the lease" to mean after the expiration of the term. See Milton R. Friedman, Friedman on Leases at § 18.1 at 1085 and n.40 (3d ed. 1990); see also United States Gypsum Co. v. Shiavo Brothers, Inc., 668 F.2d 172, 175 (3d Cir. 1981)(tenant obligated after lease termination to return premises in the condition

---

[5] Capitalizing the letter "E" in the word "Event" is intentional, as that is how the word appears in the *Beach Club Management Agreement*.

in which it received it, reasonable wear and tear excepted).[6]

For these reasons, the Court finds Park Restoration's "termination" argument to be unavailing and not persuasive.

### The Circumstances of this Case Precludes
### the Application of the "Impossibility of Performance" Defense

The plain language of the *Beach Club Management Agreement* required Park Restoration to return the Beach Club to TCLP in a condition that was "without any damage to any equipment or property." In response to this plain language, Park Restoration contends that the contract does not mean what it plainly states.

A fair reading of Park Restoration's brief is that the defendant suggests that the preceding language merely obligated the defendant to perform ordinary repairs and maintenance to the Beach Club and did not require Park Restoration to return the Beach Club to TCLP in a condition that was free from damage. Unfortunately for Park Restoration, this is not what the *Beach Club Management Agreement* provides.

What the agreement states is that Park Restoration will, upon an event of termination, vacate the premises in a broom clean condition "without ***any***

---

[6] The Court need not decide today whether the *Beach Club Management Agreement* is to be construed as a lease of real property or a license. It should be noted that the parties have from time to time taken various positions as to whether Park Restoration held a leasehold interest in the Beach Club (whether under the *Beach Club Management Agreement* or some other instrument). This history is summarized in certain of the Court's prior opinions. See *Memorandum Opinion dated 12/22/2015* (Adversary Proceeding 15-01010-JAD at ECF Doc. #82) and *Memorandum Opinion Signed on 4/12/2016* (Adversary Proceeding No. 15-01010-JAD at ECF Doc. #145). The Court takes judicial notice of these proceedings.

***damage*** to any equipment or property." See *Beach Club Management Agreement*

at §6(c)(emphasis added).  The use of the phrase "any damage" is not limiting.  It

does not mean "some damage" which may require "some maintenance" or "some

repairs."  Rather, it is an explicit covenant to return the premises free from "any

damage." This includes damage caused by catastrophic events that can materially

affect a structure (such as fire).[7]

---

[7]  Park Restoration relies on Brockett v. Carnes, 273 Pa. Super. 34, 416 A.2d 1075 (1979)
for support of its argument that Park Restoration, as a manager in sole possession of the Beach
Club, had no obligation to "restore" or "rebuild" the Beach Club.  In Brockett v. Carnes, the
court wrote:

> We need not decide whether the ... rule [found in Hoy v. Holt, 91 Pa. 88 (1879)]
> that a party who is obligated by a lease provision to repair the premises must
> rebuild them if they are accidentally destroyed is still the law in Pennsylvania.
> Assuming, *arguendo*, that the Hoy rule is still good law, we conclude that it is not
> controlling in the instant case because the lease herein provides that the lessors are
> liable for "maintenance," not "repairs." Although the dictionary definition of
> "maintenance" encompasses "repairs," it does not necessarily follow that the two
> words are synonymous when used in a commercial lease. It is arguable that
> because the Hoy rule has been the law in Pennsylvania for a century, parties
> providing in their lease that one party has the duty to repair the premises believe
> that it is unnecessary to specify that this duty includes rebuilding the premises if
> they are destroyed. However, no Pennsylvania court has ever held that a lease
> obligation to "maintain" the premises includes rebuilding them. Therefore, the
> parties in the instant case could not have reasonably believed that it was
> unnecessary to specify in their lease that the lessors were obligated to rebuild the
> premises should they be destroyed.

Brockett v. Carnes, 273 Pa. Super. at 38–39, 416 A.2d at 1077–78.

  Brockett, however, is not applicable to the matter before the Court for various reasons.
The most obvious one is that the lease in Brockett was silent on "rebuilding" and expressly
required the landlord (and not the tenant) to "maintain" the premises.  As a result, the court in
Brockett had to determine whether the word "maintain" was synonymous with the word
"rebuild."  In the instant case, under the *Beach Club Management Agreement*, TCLP clearly had

(continued...)

Not only does the contractual provision at issue apply to "any damage," the promises contained in the contract are representations and warranties by Park Restoration to TCLP.  The Court reaches this conclusion because the agreement unequivocally states: "In the Event of termination for any reason, Park Restoration ***warrants and represents*** that it will vacate the premises ensuring that it is in broom clean condition without any damage to any equipment or property." Id. (emphasis added).

Because Park Restoration expressly warranted a particular result, Park Restoration was required to strictly comply with it.  Absent such strict compliance, Park Restoration is liable for all damages occasioned by its breach.  As noted by the Third Circuit Court of Appeals, "[i]n a typical warranty, the warrantor agrees to fulfill a promise, and any failure to comply with the promise would represent a breach of the contract." Princeton Ins. Co. v. Converium Reinsurance, 344 Fed. Appx. 759, 763 (3d Cir. 2009).

---

[7](...continued)
no duty to provide "maintenance" or "repairs."  Rather, under the agreement, TCLP abdicated full control of the premises over to Park Restoration who explicitly agreed to make sure that the "property is fully secured and maintained in a commercially reasonable fashion" See *Beach Club Management Agreement* at §1.  Moreover, the duties imposed upon Park Restoration under the *Beach Club Management Agreement* were far more expansive than "maintenance."  As described elsewhere in this *Memorandum Opinion*, Park Restoration warranted and represented that the premises would be returned to TCLP "without any damage to any equipment or property." Id at § 6(c)  In addition, TCLP agreed to hold the plaintiff "harmless and fully indemnify the [plaintiff] from any loss, cost or damage with respect to any ... damage claimed to ... property ... as a result of [defendant's] use, misuse, occupancy, procession [sic], or abandonment of the Beach Club." Id. at §7.

Given the plain and unambiguous language of the *Beach Club Management Agreement*, this Court is generally powerless to re-write it.  As Chief Circuit Judge D. Brooks Smith observed when he was a district court judge: "In the overwhelming majority of circumstances, contractual promises are to be performed, not avoided."  Specialty Tires of America, Inc. v. The CIT Group/Equipment Financing, Inc., 82 F.Supp.2d 434, 437 (W.D. Pa. 2000).

The latin phrase *pacta sunt servada* is operative.  It means "agreements must be kept."  In common parlance, it means either "a promise is a promise" or, according to Chief Circuit Judge Smith, "a deal is a deal." Id. (citing Waukesha Foundry, Inc. v. Industrial Engineering, Inc., 91 F.3d 1001, 1010 (7th Cir. 1996) and John D. Calamari & Joseph M. Perillo, The Law of Contracts §13.1, at 495 (4th ed. 1998)).  This is a sound doctrine because:

> a court cannot improve matters by intervention after the fact. [Intervening after the fact] can only destabilize the institution of contract, increase risk, and make  parties worse off. ... Parties to contracts are entitled to seek, and retain, personal advantage; striving for that advantage is the source of much economic progress.  Contract law does not require parties to be fair, or kind, or reasonable, or to share gains or losses equally.

Id. (quoting Industrial Representatives, Inc. v. CP Clare Corp., 74 F.3d 128, 131-32 (7th Cir. 1996)(Easterbrook, J.).

The undisputed facts are that Park Restoration did not comply with the promises it made in its contract with TCLP because the Beach Club was totally destroyed by fire and Park Restoration did not return the premises to TCLP free

from "any damage." Park Restoration's failure to perform gives rise to a claim for damages by TCLP unless Park Restoration can interpose a defense to the claim.

In the instant case, Park Restoration contends that its obligation to perform is excused by the doctrine of "impossibility of performance." However, the Court finds that Park Restoration cannot hide behind this defense.

The "impossibility of performance" doctrine is a form of judicial "gap filling" when a contract between the parties fails to allocate risks occasioned by unforseen events. Because of the unexpected nature of these events:

> ... litigated cases usually involve, not interpretation of a contractual term, but the judicial filling of a lacuna in the parties agreement. Such "gap-filling," however, must be understood for what it is: a court-ordered, as opposed to bargained-for, allocation of risk between the parties. As such, it must be applied sparingly.

Specialty Tires, 82 F.Supp.2d at 437-38 (citations omitted).

The doctrine of impossibility of performance has its origins at common-law, and has been adopted in one form or another in the  various RESTATEMENT OF CONTRACTS.

At common law, the first general formulation of the doctrine was announced in the landmark English case of Taylor v. Caldwell, 122 Eng. Rep. 309 (1863). In Taylor, the owner of a music hall was excused of his liability for failure to make the hall available due to an accidental fire that destroyed the building. The court in Taylor excused performance stating:

> ... in contracts in which the performance depends on the

00020397                    -22-

> continued existence of a person or thing, a condition is
> implied that the impossibility of performance arising
> from the perishing of the person or thing shall excuse
> the performance.

Taylor, 122 Eng. Rep. at 314.  Interestingly, the Court in Taylor observed that the

facts and circumstances of that case provided that the "parties when framing their

agreement evidently had not present to their minds the possibility of such a

disaster, and have made no express stipulation with reference to it..." Id.

Consequently, the court in Caldwell allocated the risk such that it discharged the

music hall owner from his contractual obligation to make the venue available to

the other contracting party.

In the United States, courts applying the common law doctrine of

impossibility have focused on a number of factors to determine whether, and the

extent to which, risk should be allocated between contracting parties.  One such

factor is whether the agreement between the parties contemplates a risk

allocation.

For example, in Morrow, Inc. v. Paugh, 91 N.E. 2d 858 (Ind. App. 1950), the

defendant contracted to lease a truck.  The contract in Morrow expressly provided

that the truck was to be returned in the same condition save normal wear and

tear.  Subsequent to entry into the contract, the truck was accidently destroyed

by fire to no fault of the lessee.  The court, however, refused to discharge the

lessee's obligation to restore the truck citing that it was foreseeable that the

property could suffer damage during the term of the contract– even if the

destruction was caused exclusively by an accident and without fault on the part

of the lessee. <u>Morrow</u>, 91 N.E. 2d at 860-61.[8]

The outcome of <u>Morrow</u> is consistent with the provisions of the

Restatement (Second) Contracts that deal with impossibility of performance.

Section 261 of the  Restatement (Second) of Contracts describes the

workings of the doctrine of impossibility or impractibility.[9]  This section provides

for "Discharge by Supervening Impractibility" and states:

> Where, after a contract is made, a party's performance is made
> impractible without his fault by the occurrence of an event the non-
> occurrence of which was a basic assumption on which the contract
> was made, his duty to render performance is discharged, ***unless the
> language or the circumstances indicate the contrary***.

<u>See</u> Restatement (Second) Contracts § 261 (emphasis added).[10]

---

[8]  In the case at bar, no determination has been made with respect to the cause of the fire
at the Beach Club.  The police report advises that it "was caused by an unknown action."  The
report further states "Due to the duration of the burn and the intense heat a cause of the fire could
not be determined at the time of this report, and for these reasons this fire shall be ruled as
undetermined." <u>See</u> *Police Report* attached at <u>Exhibit A</u> to the *Plaintiff's Supplemental Brief in
Support of Plaintiff's Motion for Judgment on the Pleadings* (ECF Doc. #63).

[9]  Pennsylvania courts have adopted and/or utilized §§ 261, 263 and 265 of the
Restatement (Second) Contracts. <u>See</u> e.g., <u>Step Plan Services, Inc. v. Koresko</u>, 12 A.3d
401, 414 (Pa. Super. 2010).

[10]  Restatement (Second) Contracts addresses what a "basic assumption on which a
contract is made," and states as follows:

> If the existence of a specific thing is necessary for the performance
> of a duty, its failure to come into existence, destruction, or such
> deterioration as makes performance impracticable is an event the
> non-occurrence of which was a basic assumption on which the
> contract was made.

(continued...)

Comment *a.* to this section provides helpful guidance, where it states:

> ... The principle...***yields to a contrary agreement by which a party may assume a greater as well as a lesser obligation***.  By such an agreement, for example, a party may undertake to achieve a result irrespective of supervening events that may render its achievement impossible, and if does so his non-performance is a breach even if it is caused by such event.

Id. at Comment *a.* (emphasis added).

Similarly, at Comment *c.* to Section 261, the drafters of the RESTATEMENT (SECOND) OF CONTRACTS acknowledged:

> ... ***A party may, by appropriate language, agree to perform in spite of impractibility that would otherwise justify his non-performance***.... He can then be held liable for damages although he cannot perform.  ***Even absent an express agreement, a court may decide, after considering all the circumstances, that a party impliedly assumed such greater obligation***...

Id. at Comment *c.* (emphasis added).

What can be gleaned from these provisions of the RESTATEMENT is that if the facts and circumstances of the case provide for an agreed upon allocation of risk, that allocation generally will not be disturbed under the doctrine of impossibility of performance.

The facts and circumstances of this case before the Court, as reflected by the admissions contained in the pleadings and record, is such that the Court

---

[10](...continued)

See RESTATEMENT (SECOND) CONTRACTS § 263.  The comments to this section state that this section "does not apply if the language or the circumstances indicate the contrary." Id. at Comment *c.*

determines the parties did agree to allocate to Park Restoration the risk of damage to the Beach Club.  The terms and conditions of the *Beach Club Management Agreement* supports this conclusion.

Under the agreement, TCLP abdicated full control of the premises over to Park Restoration who explicitly agreed to make sure that the "property is fully secured and maintained in a commercially reasonable fashion" <u>See</u> *Beach Club Management Agreement* at §1.

In addition, TCLP agreed to hold the plaintiff "harmless and fully indemnify the [plaintiff] from any loss, cost or damage with respect to any ... damage claimed to ... property ... as a result of [defendant's] use, misuse, occupancy, procession [sic],[11] or abandonment of the Beach Club." <u>Id</u>. at §7

Moreover, the plain language of the agreement provides that the duties imposed upon Park Restoration under the *Beach Club Management Agreement* were far more expansive than ordinary "maintenance."  In fact, as described elsewhere in this *Memorandum Opinion*, Park Restoration warranted and represented that the premises would be returned to TCLP "without any damage to any equipment or property." <u>Id</u>. at § 6(c).  The use of the phrase "any damage" encompasses the destruction of the premises, whether occasioned by fire, accident, or otherwise and regardless of fault.

---

[11] The word "procession" appears to be a scrivener's error and should be the word "possession."

The fact that the parties' agreement allocated the risk of damage to Park Restoration is further supported by the parties' course of conduct.  That course of conduct, which is admitted by the parties, is that Park Restoration insured both the Beach Club building and its contents against loss occasioned by the fire, and TCLP did not.

That the agreement to allocate risk negates the applicability of the doctrine of impossibility is supported by various cases discussing the doctrine.   For example, one court out of Massachusetts explains the doctrine of impossibility as follows:

> ... where it appears from the nature of the contract that the parties must from the beginning have contemplated the existence of some particular thing as the foundation of what was to be done, then, ***in the absence of any warranty that the thing shall exist***.... the parties shall be excused ... [when] performance becomes impossible from the accidental perishing of the thing without the fault of either party.

See Ford Motor Credit Co. v. Williams, 1998 Mass. Super. LEXIS 555 *5 (citing Chase Precast Corp. v. John J. Paonessa Co., Inc., 409 Mass. 371, 373 (1991)(emphasis added).

Similarly, in the case of Albert M. Greenfield & Co., Inc. v. Kolea, 475 Pa. 351, 380 A.2d 758 (1977) the Pennsylvania Supreme Court excused  rental obligations of a tenant under a lease when the building was destroyed by fire because the agreement between the parties was silent as to allocation of the risk of damage.  In Greenfield the court held:

00020397

-27-

> In reaching our decision that the accidental destruction of the building by fire excused the parties from further performance of their obligations under the lease agreements, we are cognizant of the fact that we are allocating the risk to be assumed by the parties.  Such an allocation of risk can be accomplished in one of two ways.  First, the parties could specifically provide for risk assumption with respect to certain possible contingencies. [Second, in] the absence of an express recognition and assumption by the parties, the court is left with the task of determining what the parties would have done had the issue arisen in the contract negotiations. ...
>
> ... It is no longer reasonable to assume that in the absence of a lease provision to the contrary the lessee should bear the risk of loss in the event of total destruction of the building.  Where the parties do not expressly provide for such a catastrophe, the court should analyze the facts and lease agreement as any other contract.  Following such an analysis, if it is evident to the court that the parties bargained for the existence of a building, and no provision is made as to who bears the risk of loss if the building is destroyed, the court should relieve the parties of their respective obligations when the building no longer exists.

Albert M. Greenfield & Co., Inc., 475 Pa. at 356-58, 380 A.2d 760-61.

With the holding in Greenfield in mind, this Court concludes that the admissions contained in the pleadings reflect that the parties in this case bargained as to which party bore the risk of loss.  The arms-length agreement was that Park Restoration bore the risk.

Park Restoration cannot at this late hour avoid it because the law provides: "Promisors are free to assume risks, even huge ones, and promisees are entitled to rely on those voluntary assumptions." Specialty Tires of America, Inc., 82

F.Supp.2d at 437 (quoting Calamari & Perillo, <u>supra</u>. § 13.16, at 522).  In this case, TCLP relied upon Park Restoration's warranty to return the premises free from any damage.  As such, Park Restoration is liable for any damages resulting from its failure to do so.

This conclusion is neither unfair, nor is it unconscionable for it is precisely what the parties bargained.  Had the defendant desired a different result, it could have negotiated a *force majeure* clause excusing its performance.  Having not done so, the Court will not write a *force majeure* clause into the contract.

In addition, while Park Restoration does not have the capacity to tender the Beach Club to the plaintiff free from damage, Park Restoration does have the capacity to tender insurance proceeds to TCLP (which were paid by the insurance carrier on account of the Beach Club that was destroyed by fire).

That Park Restoration insured the premises against the loss at issue further supports the plaintiff's claim that, while not desirable, the calamity was in the range of possible foreseeable contingencies that could arise during the lengthy term of the agreement thereby precluding the defense of impossibility. <u>See</u> <u>e.g.</u>, <u>Portney v. Omnicare Pharm., Inc.</u>, 2004 U.S. Dist. LEXIS 12235 *10 (E.D. Pa. 2004)(finding that lessee's performance should not be excused because the "contemplation of flood was always there as evidenced by the fact that the Defendants purchased flood insurance, collected $4.5 million for this occurrence of which only 1.5 million was used to repair the premises.").

00020397                                          -29-

The Court also notes that the outcome of this matter is consistent with the "obligation of a tenant to return the leasehold property in the condition in which it was received, reasonable wear and tear excepted." U.S. Gypsum Co. v. Schiavo Bros, Inc., 668 F.2d at 174.  It is also consistent with the opinion of the United States District Court for the Western District of Pennsylvania in J.E. Faltin Motor Trans., Inc. v. Eazor Express, Inc., 172 F.Supp. 175 (W.D.Pa. 1959), aff'd 273 F.2d 444 (3d Cir. 1960), where Judge Marsh held that the defendant who possessed a tractor trailer was liable for the destruction of the equipment by fire.  The court made this finding even though the destruction was without fault of the defendant because the contract plainly and unequivocally provided, among other things, that the defendant would hold the plaintiff harmless for "any loss or damage thereto." J.E. Faltin Motor, 273 F. Supp. at 177-78; see also Caputo v. Blackstone Mut. Ins. Co., 323 F.Supp. 1252, 1254 (W.D. Pa. 1971).

For all of these reasons, the Court finds that Park Restoration's defense of impossibility is not persuasive and is without merit.

### The Defendant's Motion for Judgment on the Pleadings Is Without Merit

With respect to Count II of the *Complaint*, the plaintiff has asserted a breach of contract action against Park Restoration for failure to maintain the Beach Club in a commercially reasonable fashion.  Count III of the *Complaint* asserts a cause of action for breach of indemnity.  Park Restoration seeks judgment on the pleadings dismissing these two counts of the *Complaint*, citing the doctrine of

impossibility and that fact that the *Complaint* lacks alleged specificity regarding Park Restoration's failure maintain the property.

As to the defense of impossibility, this Court has found Park Restoration's defense of impossibility to be without merit.  As such, Park Restoration's *Motion for Judgment on the Pleadings* in this regard will be denied.

As to the defense citing the lack of specificity in Counts II and III of the plaintiff's *Complaint*, Park Restoration's motion is also untimely.  The Court reaches this conclusion because Fed.R.Civ.P. 12(e), as incorporated into Fed.R.Bankr.P. 7012, requires that a motion for a more definite statement be filed "before filing a responsive pleading."  Park Restoration has already filed its *Answer*, and cannot now complain that the *Complaint* lacks specificity.

The Court would also note that motion practice is not a substitute for discovery.  As to the adequacy of pleadings, the Federal Rules of Civil Procedure require only that a pleader serve a short and plain statement showing an entitlement to relief.  See Fed.R.Civ.P. 8(a)(2), as incorporated into these proceedings by Fed.R.Bankr.P. 7008.  In this case, TCLP has done that.

TCLP has alleged breach of contract claims and indemnity claims against Park Restoration arising out of, or relating to, Park Restoration's use and/or possession of the Beach Club.  It has also cited in detail the relevant contractual provisions giving rise to its claims for relief.

In addition, it is beyond dispute that the Beach Club burned to the ground

while it was in Park Restoration's possession and care.  It is also undisputed that

no accounting has been provided for the loss occasioned by the fire because the

cause of the fire is "undetermined."  These facts give rise to a presumption that

TCLP has met its burden of production and/or proof as to any claim that Park

Restoration failed to adequately maintain the Beach Club. See e.g. Buckley v.

Exodus Transit & Storage Corp., 744 A.2d 298, 306 (Pa. Super. 1999)("When a

bailee has exclusive possession of the goods, the acts attending loss or injury

must be peculiarly within his own knowledge.  Consequently, the bailee must

excuse or justify the failure to deliver.  This is an example of a presumption which

arises as 'a rule of proof production based upon the comparative availability of

material evidence of the respective parties.'")(quoting Schell v. Miller North Broad

Storage Co., 16 A.2d 680, 684 (Pa. 1940)).

In addition, the extent to which evidence exists supporting (or negating) the

claim against Park Restoration for failure to maintain, such evidence will come to

light during discovery if, and when, it occurs. The *Motion for Judgment on the*

*Pleadings* filed by Park Restoration will therefore be denied.

### V.
### The Litigation Going Forward

A litigant is entitled to only one recovery. Cf. Greenleaf v. Garlock, Inc., 174

F.3d 352, 357 (3d Cir. 1999) (citing Frank v. Volkswagenwerk, 522 F. 2d 321,

324- 26 (3d Cir. 1975)).

Inasmuch as the Court is entering judgment on the pleadings in favor of

00020397                                    -32-

TCLP and against Park Restoration as to Count I of the *Complaint*, it is appropriate to (a) stay the prosecution of Counts II and III of the *Complaint*, and (b) proceed to the trial of damages as to Count I. See Fed.R.Civ.P. 42; Fed.R.Bankr.P. 7042.

The Court is mindful that the plaintiff contends that the amount of damages it sustained is undisputed. In support of this proposition the plaintiff cites to the fact that Park Restoration admitted that the value of its "insured interest" is the policy limits of its insurance. Park Restoration, however, has contended that the value of its "insured interest" is different from the value of the Beach Club itself. No party, however, has fully briefed this distinction raised by Park Restoration.

Moreover, at prior hearings in this bankruptcy case, Park Restoration represented that it had made over $700,000 of improvements to the Beach Club before it burned to the ground. See *Transcript Regarding Hearing Held 6/2/2015* at p. 8 (filed at ECF Doc. #128 at Adversary No. 15-01010-JAD).

These circumstances warrant an evidentiary hearing on the damages sustained by TCLP as a result of Park Restoration's failure to return the Beach Club to TCLP free from "any damage." A trial will therefore be scheduled on this matter.

## VI.
## Conclusion

For the reasons that are set forth above, judgment on the pleadings shall be entered in favor of the plaintiff, TCLP, and against defendant, Park Restoration, as to liability on account of the breach of contract claim found in Count I of the

*Complaint.* By way of separate order, a trial will be scheduled to determine the

amount of damages the defendant is liable to the plaintiff.  The Court will also

enter an order that denies the dueling *Motion for Judgment on the Pleadings* filed

by the defendant.  Notwithstanding this denial, the prosecution of Counts II and

III of this adversary proceeding are stayed, pending further order of the Court,

because the plaintiff is allowed only one recovery.

Dated: February 21, 2017      /s/ Jeffery A. Deller_____
                              The Hon. Jeffery A. Deller
                              Chief U.S. Bankruptcy Judge

cc:    John F. Mizner, Esq.,
           counsel to Park Restoration, LLC

       George T. Snyder, Esq. and Jeanne S. Lofgren, Esq.,
           counsel to Trustees of Conneaut Lake Park, Inc.

FILED
2/21/17 1:03 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

00020397                         -34-